UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
RAMON SERAPHIN,
on behalf of himself, others similarly situated,          **MEMORANDUM AND ORDER**
and the proposed Rule 23 Class,                            11-CV-4382 (FB) (LB)

                              Plaintiff,

        -against-


TOMKATS, INC., TOMKATS CATERING,
LLC d/b/a TOMKATS MOVIE CATERING,
and THOMAS E. MORALES,

                              Defendants.
--------------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*                          *For Defendants:*
C.K. LEE, ESQ.                                JONATHAN M. KOZAK, ESQ.
Lee Litigation Group, PLLC                    Jackson Lewis LLP
30 East 39th Street, 2nd Floor                1 North Broadway, 15th Floor
New York, NY 10016                            White Plains, NY 10601

**BLOCK, Senior District Judge:**

Plaintiff Ramon Serafin[1] brings this action against defendants TomKats, Inc.,

TomKats Catering, LLC ("TomKats"), and Thomas E. Morales (collectively, "defendants"),

alleging violations of federal and state wage laws on behalf of himself and purportedly

similarly situated individuals.  Plaintiff contends that defendants: (1) failed to pay him the

proper overtime premium under the Fair Labor Standards Act ("FLSA") and the New York

Labor Law ("NYLL"), and (2) failed to pay him the spread of hours premium for each day he

worked over 10 hours in violation of the NYLL.  Plaintiff has moved for conditional collective

certification of his FLSA claim, and defendants have moved for summary judgment only on

---

[1]Ramon Serafin's last name is spelled incorrectly in the caption as "Seraphin."
The Clerk is directed to amend the caption to reflect the correct spelling as "Serafin."

the FLSA claim.  In addition, plaintiff has moved for sanctions against defendants on the ground that defendants' motion is frivolous.  For the reasons set forth below, defendants' summary judgment motion is granted in part and denied in part, and plaintiff's motion for sanctions is denied.  The Court reserves judgment on plaintiff's motion for conditional collective certification pending oral argument later this month.

## I.

Defendants provide on-location catering services for movies and special events. They have more than 225 employees, who are based out of New York, Los Angeles, and Nashville.  *See* Pl.'s Reply Supp. Cond. Coll. Cert., Ex. 2.  Plaintiff was employed by defendants at certain times from 2003 until April 2011.  For most workdays from September 2008 until April 2011, defendants paid him a fixed daily rate of $200.  From 2006 to 2010 this rate covered 14 hours, and since 2010 it covered 12 hours.  The parties vigorously dispute whether this daily rate was inclusive of an overtime premium for hours worked after 8 hours. Plaintiff also claims that he did not receive additional overtime for hours worked beyond the specified 12- or 14-hours, which defendants dispute.[2]

Plaintiff filed suit on September 6, 2011.  On May 9, 2012, the Court stayed discovery and tolled the FLSA statute of limitations pending resolution of these motions.

## II.

"The court shall grant summary judgment if the movant shows that there is no

---

[2] Defendants also state that plaintiff was paid at a different rate on days when he was assigned different work, e.g., serving breakfast only or cleaning up a location after the catering services ended.  Lauren Morales Aff. ¶ 6.  Plaintiff denies these assertions but does not appear to allege an FLSA violation in connection with this practice.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  An issue of fact is genuine if the "evidence is such that a

reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  Although "[t]he evidence of the non-movant is to be believed,

and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "[t]he

non-moving party may not rely on conclusory allegations or unsubstantiated speculation,"

*Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

A.        **Statutory Framework**

To comply with the FLSA, an employer must compensate employees at an

overtime rate of at least 1.5 times the regular rate for hours worked in excess of 40 hours per

week.  *See* 29 U.S.C. § 207(a)(1); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, --- F.3d

----, 2013 WL 765117, at *4 (2d Cir. 2013).  However, when an employer provides "extra

compensation . . . by a premium rate paid for certain hours worked by the employee in any

day . . . because such hours are hours worked in excess of eight in a day," 29 U.S.C. § 207(e)(5),

that extra compensation "shall be creditable toward overtime compensation," 29 U.S.C. §

207(h)(2); *see also* 29 C.F.R. § 778.202.  Even where the employer customarily pays employees

for hours that they did not work due to a lack of available work, "it is permissible (but not

required) to count these hours as hours worked in determining the amount of overtime

premium pay, due for hours in excess of 8 per day . . . , which may be . . . credited toward the

statutory overtime compensation." 29 C.F.R. § 778.202(a).

B.        **The Parties' Contentions**

Defendants contend that the fixed daily rate paid to plaintiff consisted of 8 hours

3

paid at a regular rate and the remainder paid at an overtime rate of 1.5. From 2006 to 2010, plaintiff received $200 for a 14-hour workday. Defendants explain that this daily salary was broken down into 8 hours at the regular rate of $11.7647 and 6 hours at the 1.5 overtime rate of $17.6471. *See* Annette McGraw Decl. ¶¶ 10-11, 14. When plaintiff later earned $200 for just 12 hours of work, defendants explain his daily compensation as broken down into 8 hours at the regular rate of $14.2857 and 6 hours at the 1.5 overtime rate of $21.4286.

Plaintiff insists that defendants violated the FLSA; however, his allegations are vague, conclusory, and shifting. In his complaint, plaintiff alleged that "[d]efendants unlawfully failed to pay . . . one-and-one-half times New York State and federal minimum wage for hours worked over 40 in a workweek." Compl. ¶ 29. Similarly, in his declaration, plaintiff states that "[b]ecause I was paid on a fixed daily rate, I was not paid overtime at the rate of time-and-one-half for every hour I worked over forty hours in a workweek." Ramon Serafin Decl. ¶ 3. These assertions suggest a misunderstanding of the FLSA's requirements. The FLSA permits an employer to count daily overtime premiums toward fulfillment of the weekly overtime requirement. *See* 29 U.S.C. § 207(h)(2).[3] Now, in opposing summary judgment, plaintiff principally argues that there was no agreement that his daily rate included an overtime premium. For the reasons explained below, just one aspect of plaintiff's FLSA claim survives summary judgment.

---

[3]Plaintiff's claims also convey a misunderstanding of defendants' calculations, which he asserts "make no sense because it is derived from dividing $200 by 17 hours." Pl.'s Mem. Opp. Summ. J. 6. To the contrary, they do make sense. When plaintiff earned $200 for 14 hours of work, defendants assert that he was paid at his hourly rate for 8 hours and at 1.5 times his hourly rate for 6 hours. A mathematically equivalent way to indicate this is to say that he received his hourly rate for 17 hours of work: [8 hours × (1.0 × hourly rate)] + [6 hours × (1.5 × hourly rate)] = 17 hours × hourly rate.

C.          **Validity of Overtime Premiums as Built into the Daily Rate**

In opposing summary judgment, plaintiff contends that: (1) his daily rate of pay did not include an overtime premium, and (2) even if his daily rate did include an overtime premium, he never agreed to and was not aware of this arrangement. In response, defendants have presented substantial evidence to support their assertion that the daily rate included payment at an overtime rate for hours worked in excess of 8 but less than 12 or 14.

Defendants have produced hundreds of plaintiff's records. His time sheets indicate his hours worked, his daily rate, and additional overtime pay for hours beyond 12 or 14. *See generally* Morales Aff., Ex. B. Where additional overtime pay was awarded, the time sheets indicate the amount of overtime hours and overtime pay. *See, e.g.*, Morales Aff., Ex. B, at 000355, 000372, 000479. The computerized versions of plaintiff's weekly pay records list his daily rate, as well as his hourly rate and his overtime rate. *See, e.g.*, Morales Aff., Ex. B, at 000359, 000489, 000540. The records also indicate payments received at his hourly rate when he worked only partial days. *See, e.g.*, Morales Aff., Ex. B, at 000371, 000489. Although the records do not expressly state the breakdown between hours paid at the regular rate and hours paid at the 1.5 overtime rate within the fixed daily rate, the listed rates clearly corroborate defendants' explanation of the breakdown of the daily rate. In other words, defendants' explanation yields an hourly rate of $11.7647 from 2006 to 2010, and an hourly rate of $14.2857 starting in late 2010. The hourly rates on the records match these hourly rates, and the overtime rates on the records are multiples (either 1.5 or 2.0) of these hourly rates.

Plaintiff has not offered any reason to question defendants' logical, substantiated explanation for the daily rate, nor does he question the authenticity of the pay records.

Plaintiff likewise makes no attempt to address the fact that defendants' breakdown of the daily rate results in the exact regular hourly rate that is listed on his pay records and that was used to calculate the additional overtime that he admits receiving.  Though plaintiff insists that his $200 daily rate did not include an overtime premium, he does not even attempt to explain under his scenario how his additional overtime hourly rate would be derived.[4]

Similarly, plaintiff accuses defendants of "artificially" dividing his daily salary into a straight time period and an overtime period.  Employers may not circumvent the FLSA by artificially doing that, *see* 29 C.F.R. § 778.202(c); however, there is nothing to suggest that defendants did so here.  *Cf. Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 330 (S.D.N.Y. 2009) (rejecting defendants' assertion that there was a built-in overtime component because there were varied base rates during the same period and there was no evidence that plaintiff was ever paid at the claimed hourly rate or at any multiple thereof).  The FLSA regulations refer to a plan with artificial divisions as an unlawful "split day" plan.  Under such a plan,

> an employee who would ordinarily command an hourly rate of pay well in excess of the minimum for his work is assigned a low hourly rate (often the minimum) for the first hour (or the first 2 or 4 hours) of each day. This rate is designated as the regular rate: "time and one-half" based on such rate is paid for each additional hour worked during the workday.

29 C.F.R. § 778.501(a); *see also id.* § 778.501(b) ("Such a division of the normal 8–hour workday into 4 straight time hours and 4 overtime hours is purely fictitious. The employee is not paid at the rate of $5 an hour and the alleged overtime rate of $7.50 per hour is not paid for

---

[4]Given plaintiff's claim that his $200 daily rate did not include an overtime premium, his post-May 2010 hourly rate would be $16.67 ($200 ÷ 12 hours).  Yet, plaintiff received overtime pay for hours worked in excess of 12 that are multiples of $14.2867 (i.e., the hourly rate calculated by treating 4 of the 12 hours at a premium rate), not multiples of $16.67. *See, e.g.*, Morales Aff., Ex. B, at 000482.

6

overtime work."). Though plaintiff suggests that defendants' practice constitutes an unlawful "split day" plan, he provides no facts or evidence that connect defendants' practice to the one barred by the FLSA. Defendants assert a consistent hourly rate, offer records that list this rate, and offer undisputed evidence that plaintiff was paid in multiples of this rate for additional overtime.

Instead of trying to rebut defendants' logical explanation for the breakdown of the daily rate, plaintiff argues that there was no agreement that the daily rate included an overtime premium and that he was not aware of this arrangement. He relies entirely on cases interpreting 29 C.F.R. § 778.114, which describes the "fluctuating workweek" method. In order for this approach to apply, the employer must meet the following criteria: (1) the employee's hours must fluctuate from week to week; (2) the employee must receive a fixed weekly salary that remains the same regardless of the number of hours worked during that week; (3) the fixed amount must be sufficient to compensate the employee at a regular rate that is not less than the legal minimum wage; (4) the employer and the employee must have a "clear mutual understanding" that the employer will pay the employee the fixed weekly salary regardless of hours worked; and (5) the employee must receive 50% overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40 during that week. 29 C.F.R. § 778.114.[5]

Neither party contends that the "fluctuating workweek" approach describes

---

[5]Some courts within this Circuit have "infer[red] the terms of the parties' agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record," even though "there is no written employment agreement or other written instrument memorializing the parties' intentions." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (internal quotation marks omitted).

7

defendants' compensation practice — plaintiff simply seeks to rely on § 778.114's "clear mutual understanding" requirement. Plaintiff received a fixed daily salary, not a fixed weekly salary. Moreover, his daily salary was only "fixed" for the first 12 or 14 hours worked. After that, he received additional overtime compensation. The fluctuating workweek method is used to calculate overtime where the number of hours worked fluctuates each week while the weekly salary remains constant. By contrast, although the number of hours that plaintiff worked fluctuated by week, his fixed daily salary was for a fixed number of hours. Thus, his situation is distinguishable, and there is no basis for importing the agreement requirement.[6]

Although neither party has presented the Court with a signed employment agreement, defendants offer a one-page memorandum, titled "Movie Employee Pay Calculation," that describes the pay breakdown for day rate employees. Morales Aff., Ex. A ("For Payroll Calculations Hourly Rate is Determined based upon a 14 hour day assuming 8 hours is straight time and 6 hours is overtime."). Defendants claim that they sent this notice to all employees around January 2009. Plaintiff insists that he never received it and suggests that it is a fabrication. Plaintiff also states that, even if authentic, the notice is inadequate because it was not provided to him in his primary language.

The factual disputes surrounding this memorandum, however, are insufficient

---

[6]Plaintiff has not cited any cases applying § 778.114 to a daily rate arrangement. Although a district court case did apply the agreement requirement from § 778.114 to a case involving a daily salary, the court did not provide any explanation or legal support for its approach. *See Solis v. Cindy's Total Care, Inc.*, 10-CV-7242, 2012 WL 28141, at *19 (S.D.N.Y. Jan. 5, 2012). Moreover, a circuit court has expressly declined to take this approach. *See Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 268 (5th Cir. 2000) (holding that § 778.114 does not apply to employer's day rate policy and thus no agreement was necessary).

to create a triable issue of fact. Plaintiff has not offered sufficient evidence to establish that notice was required or that the purported breakdown is a sham. In cases where courts have questioned the employers' assertions that a fixed rate included an overtime premium, there was evidence of suspicious bookkeeping errors, *see, e.g.*, *Mascol v. E&L Transp., Inc.*, 387 F. Supp. 2d 87, 96 (E.D.N.Y. 2005), evidence of backward-adjusting, *see, e.g.*, *Solis*, 2012 WL 28141, at *8, a lack of evidence that the hourly rate was ever used, *see, e.g.*, *Cuzco*, 262 F.R.D. at 335, or some other evidence to suggest that the practice was a sham. In the present case, there is nothing of the sort. Plaintiff's alleged lack of understanding, without any evidence to suggest an FLSA violation, is simply not enough to withstand summary judgment.

**D.** **Payment of Overtime for Hours in Excess of 12 or 14 in a Workday**

Plaintiff briefly argues that defendants did not pay him overtime for all hours worked in excess of his specified daily hours. Yet he previously stated without qualification:

> Between 2006 and on or about April 2010, in addition to my fixed daily rate, I was paid additional compensation if I worked over 14 hours a day. Since on or about May 2010 until my termination, in addition to my fixed daily rate, I was paid additional compensation if I worked over 12 hours a day.

Serafin Decl. ¶ 4. Though he now contends that he was not compensated for all additional hours, he cites only one wage statement in support. *See* C.K. Lee Aff., Ex. 1, at 000006. Defendants point out that this February 5, 2006 wage statement falls outside the three-year statute of limitations period, *see* 29 U.S.C. § 255(a), to which plaintiff provides no response. Thus, plaintiff has failed to present admissible evidence to survive summary judgment on his claim that he did not receive overtime compensation for hours worked in excess of 12 or 14.

**E.** **Payment of Overtime for Hours Worked in Excess of 40 in a Workweek**

Plaintiff's complaint broadly alleges that defendants failed to compensate him

9

at an overtime rate for hours worked in excess of 40 per week.  As explained above, the FLSA permits the use of a daily rate that includes an overtime premium for daily hours in excess of 8. Additionally, the FLSA permits defendants to credit the hours worked at this premium rate towards the statutory overtime compensation required for hours worked in excess of 40.

In moving for summary judgment, defendants assert that "[a]mounts paid by the Company to Plaintiff on a daily basis inclusive of overtime for hours worked after 8 to the specified daily hours (plus time and one-half or double pay after the specified daily hours), satisfied the Company's overtime obligation under the FLSA."  Defs.' Mem. Supp. Summ. J. 7.  According to defendants, plaintiff received 8 hours of pay at the regular rate and either 4 or 6 hours of pay at the 1.5 rate.  *See* Morales Aff. Ex. A; McGraw Decl. ¶¶ 11-14; Domingo Decl. ¶¶ 4-6.

The FLSA issue, however, is more nuanced than either party has indicated.  The pay records reveal that the premium payment did not always fully satisfy defendants' overtime obligation. Defendants are only permitted to credit the hours in excess of 8, which were paid at a premium rate, toward the statutory overtime requirement.  When plaintiff worked more than 5 full workdays in one week, he was paid at the regular rate for more than 40 hours and thus did not receive sufficient overtime compensation. *See, e.g.*, Morales Aff., Ex. B, at 000345, 000388.  Neither party has directly identified this issue.  Instead, plaintiff contends that he never received overtime compensation for hours over 40 per week, and defendants insist that crediting the overtime premium towards the statutory requirement satisfied their duties under the FLSA.

After reviewing the numerous pay records submitted by the parties, the Court

has gleaned that plaintiff worked more than 5 full workdays, and accordingly was compensated at his regular hourly rate for more than 40 hours, on at least 17 occasions.[7]  In addition, there are more than 15 weeks in which the records are unclear regarding the rates that plaintiff received, and thus it is possible that he is entitled to additional compensation during these weeks as well.[8]  Based on the Court's calculations, plaintiff is entitled to approximately $815 in additional overtime compensation for the 17 clear instances of violations.[9]  It is likely that plaintiff is also entitled to additional overtime compensation for weeks in which the record suggests underpayment but is not entirely clear.

Defendants offer no explanation as to how they could have met their weekly overtime requirement when plaintiff worked more than 5 full workdays (i.e., more than 40 hours at his regular rate).  Therefore, in this one respect, defendants' summary judgment motion is denied.

### III

_____

[7]_See_ Morales Aff., Ex. B, at 000307-09 (week ending 9/14/2008); 000344-45 (week ending 12/14/2008); 000376 (week ending 7/26/2009); 000378 (week ending 8/9/2009) 000388 (week ending 10/4/09); 000395 (week ending 11/22/09); 000413, 000510 (week ending 2/28/10);  000415, 000511 (week ending 3/7/10); 000417, 000512 (week ending 3/14/10); 000424, 000516-17 (week ending 4/11/10); 000425, 000518-19 (week ending 4/18/10); 000432, 000523 (week ending 5/9/10); 000434, 000525 (week ending 5/23/10); 000454, 000544 (week ending 9/5/10); 000460 (week ending 10/1/10); 000461 (week ending 10/9/10); 000462 (week ending 10/17/10); _see also_ Morales Aff., Ex. B, at 000495-503 (perpetual history report).

[8]_See, e.g.,_ Morales Aff., Ex. B, at 397-99, 457, 472.  In these weeks, it is unclear whether plaintiff received proper overtime compensation because the time records do not indicate the rates assigned to various tasks.

[9]For example, during 2009 and 2010, plaintiff worked 6 full workdays on at least 10 occasions.  He was thus paid at his regular rate ($11.7647) for 48 hours during those weeks, even though the FLSA requires payment at overtime rates for hours in excess of 40.  Plaintiff is therefore entitled to an additional $47.06 in those 10 weeks.

Plaintiff has moved for sanctions, arguing that defendants' motion for partial summary judgment is frivolous and intended only to cause unnecessary delay and increase costs. To trigger an award under Rule 11, the party moving for sanctions must establish that the other party's position was "objectively unreasonable." *Salovaara v. Eckert*, 222 F.3d 19, 34 (2d Cir. 2000); *see also Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991) (noting that sanctions are appropriate "where it is patently clear that a claim has absolutely no chance of success" (internal quotation marks omitted)). The arguments put forth in defendants' motion were not objectively unreasonable. Moreover, for the reasons stated above, the Court agrees with most of defendants' contentions. Sanctions are therefore unwarranted.

## IV

For the reasons stated above, defendants' motion for summary judgment is granted in part and denied in part. Plaintiff's motion for sanctions is denied.

The parties are directed to appear for oral argument on March 15, 2013, at 4 p.m., regarding plaintiff's motion for conditional collective certification. Given the limited nature of the surviving FLSA claim and the corresponding damages, the parties are encouraged to discuss settlement of this matter and should be prepared to report on the progress of such discussions.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 11, 2013

12